

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CR–13–17

|  |  |  |
|---|---|---|
| TONY BOYKINS, JR. | | **Opinion Delivered** September 4, 2013 |
| | APPELLANT | APPEAL FROM THE JEFFERSON COUNTY CIRCUIT COURT [NO. CR–2011-445-1] |
| V. | | |
| | | HONORABLE BERLIN C. JONES, JUDGE |
| STATE OF ARKANSAS | | |
| | APPELLEE | AFFIRMED |

## ROBERT J. GLADWIN, Chief Judge

A Jefferson County jury convicted appellant, Tony Boykins, Jr., of murder in the first degree and found that he had used a firearm in the commission of the crime. He received a sentence of forty years' imprisonment in the Arkansas Department of Correction (ADC), along with an additional ten years' imprisonment in the ADC for the use of a firearm. His sole argument on appeal is that the trial court erred in excluding the testimony of a witness regarding a statement given by appellant's brother. We affirm.

On September 16, 2011, the State filed an information charging appellant as a habitual offender with one count each of murder in the first degree and possession of a firearm by certain persons. The information alleged that appellant unlawfully caused the death of Brian

SLIP OPINION

Keith Smith on or about July 27, 2011, and that he unlawfully possessed a .22-caliber handgun on or about that same date.[1]

During the State's case-in-chief, witnesses Erica Mixon, Tia Sykes, Jamelia "Samon" Walker, and Marissa Gilbert, all of whom resided at the Pine Bluff apartment complex where the shooting occurred, testified that appellant shot Mr. Smith with a handgun during a physical altercation between Mr. Smith and appellant's brother, Terrell Boykins. Officer James Huff, Detective Chris Kendrick, Crime Scene Technician Cathy Ruhl, and Detective Richard Wegner, all of the Pine Bluff Police Department, testified about their involvement in the investigation.[2] Testimony during appellant's case-in-chief included that of Shirley Paylor, who resided at the complex, and the reexamination of Officer Kendrick. Neither appellant nor his brother testified.

The State, in its closing argument, urged a finding of guilt based on the testimony of its witnesses, while appellant maintained that Ms. Sykes's boyfriend, "Pig," had committed the shooting and asserted that the State's four eyewitnesses had lied to protect Pig's penal interests. Appellant was found guilty and sentenced pursuant to a sentencing order filed on July 5, 2012. He filed a timely notice of appeal on July 17, 2012.

---

[1]By agreement of the parties, on June 20, 2012, the firearm-possession charge was severed from the first-degree murder charge for trial.

[2]Dr. Frank Peretti, a forensic pathologist/associate medical examiner, and Rebecca Mullen, a forensic firearm/tool-mark examiner, both with the Arkansas State Crime Laboratory, also testified for the State, but their testimony is not at issue in this appeal.

Appellant's sole point on appeal is whether the circuit court erred by refusing to allow certain testimony from a witness. The decision to admit or exclude evidence is within the sound discretion of the circuit court, and we will not reverse that decision absent a manifest abuse of discretion. *Scamardo v. State*, 2013 Ark. 163, __ S.W.3d __. The abuse-of-discretion standard is a high threshold that does not simply require error in the circuit court's decision, but requires that the circuit court act improvidently, thoughtlessly, or without due consideration. *Id.* Nor will we reverse absent a showing of prejudice. *Id.*

The objection at issue occurred during appellant's re-cross-examination of Detective Wegner, one of the assigned detectives, regarding to the contents of a witness statement. On direct examination, Detective Wegner acknowledged that he had interviewed Terrell Boykins during the investigation. On cross-examination, Detective Wegner admitted that his summary referred to Pig and to the wearing of a red shirt but noted that nobody at the complex "could identify this person other than he was wearing a red shirt." On redirect examination, Detective Wegner stated that, although he did not recall whether Terrell mentioned an individual named Pig, he did not believe Terrell did so.

Appellant's counsel then questioned Detective Wegner about the written statement he had taken from Terrell. The State then pointed out that the paragraph in question concerned something that a male in a red shirt had said to Terrell. Observing that Terrell did not identify the male in the red shirt as Pig and that another male at the scene could also have been wearing a red shirt, the State objected to further inquiry as to anything Terrell said in that paragraph of his statement.

3

Appellant's counsel acknowledged that Terrell's statement did not identify the individual in the red shirt as Pig, noted that the statement involved an apparent threat against Terrell, and added that a witness had already testified to Pig's engaging in a fight and wearing a red shirt. The State replied that if Terrell had identified the individual as Pig, "we wouldn't be up here having this discussion." In further support of its position, the State, alluding to appellant's theory that Pig had perpetrated the crime and that the eyewitnesses were lying to protect him, observed that appellant had continually emphasized Pig's role in the relevant events.

Shortly thereafter, appellant's counsel noted the possibility that Terrell did not know Pig's name and reiterated that "[t]he people who knew who Pig was identified him this way." The circuit judge inquired as to the supporting testimony, and appellant responded, "The woman downstairs, the Gilbert woman[,]" to which the circuit judge replied, "She identified Pig as wearing a red shirt?" After appellant's counsel answered "yes," the State noted the absence of testimony as to whether anyone else at the scene was wearing a red shirt. The circuit judge subsequently sustained the objection.

The State asserts that appellant's argument is not preserved for appeal. Appellant argues that Detective Wegner's testimony apparently was excluded because it lacked relevance and thus admissibility. The record does not contain an explicit ruling by the circuit court excluding the proffered testimony on relevancy grounds, with the circuit judge stating generally, "I will sustain the objection." The State notes that appellant failed to clarify on

what grounds the objection was being sustained; accordingly, this court is unable to determine the basis on which the evidence was excluded.

Although neither the parties nor the circuit judge specifically used the word "relevance" in connection with the objection, we reach the merits of appellant's argument because the basis of the circuit court's ruling was apparent from the context of the remarks of both the circuit judge and counsel indicating that the objection did rest on the relevance of the information. Relevant evidence is generally admissible, whereas evidence that lacks relevance lacks admissibility. Ark. R. Evid. 402 (2012). The term "'[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ark. R. Evid. 401.

Appellant contends that the State's remarks reflect a recognition that evidence of an encounter between Terrell and Pig during the incident would tend to show that Pig was present as the events unfolded and was in a position to have been the shooter. He maintains that the fact that Terrell's statement did not identify the individual as Pig does not prove fatal to its admissibility.

Appellant argues that, when viewed in conjunction with Ms. Gilbert's testimony that Pig was involved in the incident and was wearing a red shirt at the time, Terrell's assertion that he encountered a male wearing a red shirt during the incident bolsters the proposition that Pig was present as the events unfolded and was in a position to have been the shooter. The failure of Terrell's statement to identify the individual in the red shirt as Pig goes to its

weight and not to its admissibility. Accordingly, appellant urges that the circuit court abused its discretion by sustaining the State's objection.

Finally, appellant asserts that the circuit court's exclusion of the statement was prejudicial to his case. He notes that the uncorroborated testimony of a single witness constitutes the only evidence of Pig's involvement that was admitted at trial. Appellant claims that the exclusion of the evidence was prejudicial because the jury was unaware that any other evidence of a third-party's potential involvement existed.

Appellant's claims lack merit. Although evidence of a possible third party's guilt may be introduced at trial, it is admissible only when the evidence points directly to the guilt of the third party. *Birts v. State*, 2012 Ark. 348. Evidence of a potential third party's guilt, which speaks solely to motive or opportunity, is insufficient to create a reasonable doubt of the defendant's guilt; "there must be direct or circumstantial evidence linking the third person to the actual perpetration of the crime." *Zinger v. State*, 313 Ark. 70, 75, 852 S.W.2d 320, 323 (1993) (internal citation omitted); *see also Johnson v. State*, 342 Ark. 186, 27 S.W.3d 405 (2000) (upholding the exclusion of evidence attempted to be introduced to implicate a third party).

We hold that the excluded testimony did nothing more than offer a motive or opportunity for a third party to commit the murder. As in *Johnson*, there was nothing in the excluded testimony that could have implicated Pig, either directly or circumstantially, in Mr. Smith's murder. The proffered testimony did not even identify the male as being Pig, describing only a threat from a male in a red shirt. The fact that a different witness recalled

that Pig had worn a red shirt is insufficient to support the conclusion that Pig was the man who made the threat, or, more importantly, that he was the person who shot Mr. Smith. Accordingly, we hold that the circuit court did not abuse its discretion by excluding Detective Wegner's testimony.

Additionally, no prejudice was shown. *Scamardo*, *supra*. The testimony presented in this case pointed overwhelmingly to appellant's guilt. Four eyewitnesses testified to seeing appellant shoot Mr. Smith on the morning in question. Any additional evidence indicating there were other men at the scene of the crime does not negate the fact that appellant specifically was observed shooting Mr. Smith by those witnesses.

Affirmed.

WALMSLEY and HARRISON, JJ., agree.

*Robinson & Zakrzewski, P.A.*, by: *Luke Zakrzewski*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Kathryn Henry*, Ass't Att'y Gen., for appellee.