Cite as 2020 Ark. App. 357

# ARKANSAS COURT OF APPEALS
DIVISION I
**No.** CR-19-67

| | | |
|---|---|---|
| TERRELL THOMAS | | **Opinion Delivered:** August 26, 2020 |
| | APPELLANT | |
| | | APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. 26CR-16-567] |
| V. | | |
| | | HONORABLE MARCIA R. HEARNSBERGER, JUDGE |
| STATE OF ARKANSAS | | |
| | APPELLEE | AFFIRMED |

**PHILLIP T. WHITEAKER, Judge**

Appellant Terrell Thomas was charged with one count of aggravated robbery for robbing a Shell gas station on Park Avenue in Hot Springs. Thomas pled guilty to the charge, but he opted to be sentenced by a jury. Following a sentencing trial, a Garland County jury sentenced Thomas to twenty-five years in the Arkansas Department of Correction. Thomas filed a timely notice of appeal, and he now argues for his sole point on appeal that the circuit court erred in allowing the State to introduce evidence pertaining to two other crimes with which he had been charged but not yet convicted. We find no error and affirm.

I. *Factual Background*

Faith Robinson, a clerk at the Park Avenue Shell station, called police on August 3, 2016, to report an armed robbery. Robinson told police that a black male had entered the store and selected a bag of chips. When he brought the chips to the register, he produced a

handgun and demanded money from the register while pointing the gun at Robinson's head. The robber obtained about $600 and fled the scene, but he left the bag of chips behind. Police officers processed the bag for fingerprints; the state crime lab later determined that two of the four prints were Thomas's.

Hot Springs Police Department detective Scott Lampinen was assigned to investigate the case. Lampinen reviewed the surveillance videotapes from the Shell store and observed that the suspect was wearing a red baseball cap, a white t-shirt, gray shorts with a black stripe on the sides, and black Nike Air Force 1 shoes. After the crime lab identified the fingerprints on the chip bag as Thomas's, Lampinen was able to locate photographs of Thomas to compare to the surveillance video; the photos and the video matched. As a result, his investigation turned toward Thomas as the robbery suspect.

Lampinen subsequently learned that Thomas's brother had been arrested and incarcerated recently in Hot Springs. By monitoring the brother's phone calls, Lampinen was able to discover an address for Thomas and eventually contacted Thomas's sister-in-law, Brittany Thomas, at that address. Lampinen told Brittany he was looking for Terrell Thomas. Brittany told Lampinen where Thomas lived, and she added that she knew the police were looking for Thomas because she had seen Thomas's picture in the paper from a previous robbery at a Burger King that had occurred in May 2016.

With this information, Lampinen went to the address Brittany provided and contacted a woman named Diamond. Diamond gave Lampinen consent to search her apartment. In the search, Lampinen found an Arkansas Razorback sweatshirt and a black semiautomatic BB gun. He also found the gray shorts with a black stripe that were visible

2

in the Shell robbery video and located a pair of black Nike Air Force 1 shoes similar to those seen in the Shell surveillance video. Lampinen observed that these shoes were also similar to those worn in two other robberies that had taken place before the Shell robbery—one at a Hot Springs Holiday Inn and another at a Burger King—that he was investigating. On the basis of this evidence, Lampinen met with Thomas at the police department, advised him of his *Miranda* rights, and showed him a set of still photos taken from the Shell surveillance video. Thomas admitted that he was the person in the photos.

Lampinen's investigation of Thomas's involvement in the Shell robbery led him to develop Thomas as a suspect in the Holiday Inn and Burger King robberies. Both of these robberies had occurred on the same day within forty-five minutes to an hour of each other. Notably, the Arkansas Razorback sweatshirt discovered in Diamond's apartment and the black Nike Air Force 1 shoes appeared to match the shirt and shoes worn by the suspect in both of these robberies. Thomas was thereafter charged with one count of aggravated robbery for the Holiday Inn break-in and one count of criminal attempt to commit aggravated robbery for the Burger King robbery. These charges were separate and independent from the charges arising from the Shell robbery.

## II. *Criminal Proceedings*

Before Thomas was scheduled to be tried for the Shell robbery, the State filed a motion to admit evidence of the Holiday Inn and Burger King incidents pursuant to Arkansas Rule of Evidence 404(b). The circuit court held a hearing on the State's motion and heard testimony from Lampinen about his investigations of the three robberies. Ultimately, the court denied the State's motion.

3

Thomas subsequently pled guilty to the Shell robbery, and the circuit court set a jury trial to determine Thomas's sentence. The morning of the sentencing trial, Thomas reminded the court that it had denied the State's motion to introduce the Rule 404(b) evidence regarding the Holiday Inn and Burger King robberies and asked that it likewise be precluded from introducing evidence of those charged but unconvicted crimes during sentencing. The State, however, argued that pursuant to Arkansas Code Annotated section 16-97-103, relevant character evidence and evidence of aggravating or mitigating circumstances were admissible during sentencing.

The circuit court ultimately ruled that Thomas's arrest in the other two cases was relevant and admissible in the sentencing trial. During the ensuing sentencing trial, the State called witnesses to testify about the Shell robbery.[1] The State then offered evidence of Thomas's involvement with the Holiday Inn and Burger King robberies through testimony from Detective Lampinen and Brittany Thomas and by introducing the surveillance videos from the Holiday Inn and the Burger King. At the conclusion of the sentencing trial, the jury sentenced Thomas to twenty-five years in prison.

III. *Standard of Review and Relevant Law*

Arkansas Code Annotated section 16-97-101 (Repl. 2016) provides that criminal prosecutions in which a jury sits as the trier of fact are bifurcated into a guilt-innocence phase and a penalty phase. *Peer v. State*, 2020 Ark. App. 181, 598 S.W.3d 59 (citing *Helms v. State*, 92 Ark. App. 79, 211 S.W.3d 53 (2005)). Here, Thomas entered a plea of guilty to

---

[1] We reference but do not set out the substance of this testimony as it is not relevant to the issues raised on appeal.

the charges but elected to proceed to a jury trial for purposes of the penalty phase. He appeals the jury's sentencing verdict and alleges that the circuit court erred in admitting evidence in the penalty phase. A circuit court's decision to admit evidence in the penalty phase of a trial is reviewed for an abuse of discretion. *Id.* The abuse-of-discretion standard is a high threshold that does not simply require error in the circuit court's decision but requires that the circuit court act improvidently, thoughtlessly, or without due consideration. *Boykins v. State*, 2013 Ark. App. 463. Nor will we reverse absent a showing of prejudice. *Id.*

IV. *Discussion*

Thomas argues that the circuit court erred in allowing the State to call Detective Lampinen and Brittany Thomas to testify about the Holiday Inn and Burger King crimes with which Thomas had been charged but not convicted. The State responds that the circuit court did not abuse its discretion and properly allowed evidence of Thomas's character and of aggravating circumstances pursuant to section 16-97-103(5) & (6). We agree with the State.

Arkansas Code Annotated § 16-97-103(5) & (6) (Repl. 2016) provides that evidence relevant to sentencing by either the court or a jury may include, but is not limited to, relevant character evidence and evidence of aggravating and mitigating circumstances. Arkansas Rule of Evidence 401 defines "relevant evidence" as evidence having any tendency to make the existence of any fact that is of consequence to the determination of

5

the action more probable or less probable than it would be without the evidence. Relevant evidence is generally admissible. Ark. R. Evid. 402.[2]

Our supreme court has held that under Ark. Code Ann. § 16-97-103, certain evidence is admissible at the penalty phase that would not have been admissible at the guilt-innocence phase of the trial. *Crawford v. State*, 362 Ark. 301, 208 S.W.3d 146 (2005). In *Crawford*, the supreme court held that evidence of Crawford's subsequent, uncharged drug activity was relevant proof of his character and was relevant to the jury's determination of an appropriate punishment. *Crawford*, 362 Ark. at 306, 208 S.W.3d at 149. In *MacKool v. State*, 365 Ark. 416, 231 S.W.3d 676 (2006), the supreme court held that evidence of a thirty-two-year-old homicide investigation and a ten-year-old domestic-violence arrest were relevant evidence of the defendant's character during sentencing following a first-degree murder conviction. In *Brown v. State*, 2010 Ark. 420, 378 S.W.3d 66, the supreme court held that evidence of prior or subsequent uncharged criminal conduct can be admissible at the penalty phase of a trial if it is relevant evidence of the defendant's character or as evidence of an aggravating circumstance. *Id.* at 14, 378 S.W.3d at 74.

Thomas attempts to distinguish these cases by arguing that the evidence offered in the penalty phases of those cases was uncharged criminal conduct, whereas the evidence entered against him in the penalty phase was of crimes with which he had been charged. On the facts presented in this case, we conclude this is a distinction without a difference.

---

[2]Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Ark. R. Evid. 403.

The circuit court found the evidence of the Holiday Inn and Burger King robberies was relevant and admissible. We agree. This evidence showed that the Shell robbery was not an isolated incident; indeed, it demonstrated that Thomas engaged in a pattern of criminal behavior and was thus relevant to the jury's determination of an appropriate sentence. *See, e.g.*, *Hill v. State*, 318 Ark. 408, 887 S.W.2d 275 (1994) (holding that the circuit court did not err in admitting evidence during sentencing regarding the victim's prior attempt to rob the same victim); *Davis v. State*, 60 Ark. App. 179, 962 S.W.2d 815 (1998) (affirming introduction of testimony regarding prior drug sales to show that appellant had engaged in similar transactions with different people). The evidence of the two other crimes was thus relevant evidence of Thomas's character for the jury to consider at sentencing.

Further, we review a decision allowing the introduction of evidence for an abuse of discretion. For a circuit court to abuse its discretion in the admission of evidence, the court must not only commit an error, it must have acted improvidently, thoughtlessly, or without due consideration. *Kellensworth v. State*, 2020 Ark. App. 249, 600 S.W.3d 622; *Muhammad v. State*, 2019 Ark. App. 87, 572 S.W.3d 21. Here, in ruling on whether to allow the evidence of other charged crimes, the circuit court gave due consideration to both Thomas's and the State's arguments for and against admissibility. The court agreed with the State that the evidence was relevant to Thomas's character, but it also agreed with Thomas that it was improper to allow the State to "try" the entirety of either the Holiday Inn or the Burger King incidents. Ultimately, the court reasoned:

> All of those things [regarding the other two robberies] are relevant to his character. But we're not gonna try the whole case. I mean if the police officer comes in and says he's a suspect, he's been developed as a suspect because of this, this, this, and this, I think that's fine.

It is clear from the circuit court's reasoning that the court did not act improvidently or thoughtlessly. We therefore find no abuse of discretion in our review of the circuit court's decision.

Finally, even if it could somehow be said that introduction of this evidence was in error, Thomas still cannot demonstrate that he was prejudiced by it. A defendant who has received a sentence within the statutory range short of the maximum sentence cannot show prejudice from the sentence itself. *Boothe v. State*, 2020 Ark. App. 193, 598 S.W.3d 546. Aggravated robbery is a Class Y felony with a sentencing range of ten to forty years or life. Ark. Code Ann. § 5-4-401(a)(1) (Repl. 2006). Thomas was sentenced to twenty-five years. Because his sentence was within the statutory range, Thomas has failed to demonstrate any prejudice from the imposition of the sentence. It is axiomatic that we will not reverse in the absence of a demonstration of prejudice. *Fredrickson v. State*, 2011 Ark. App. 749 (declining to reverse on an evidentiary ruling when defendant was sentenced to twenty-five years on a Class Y felony). Accordingly, we affirm Thomas's sentence.

Affirmed.

HIXSON and MURPHY, JJ., agree.

*T. Clay Janske*, Garland County Deputy Public Defender, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Rebecca Kane*, Ass't Att'y Gen., for appellee.